IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ALBERT LYNN COLE, ADC #090762                                  PLAINTIFF

v.                                 No. 5:11-cv-00232 KGB

ARKANSAS DEPARTMENT OF CORRECTION,
RAY HOBBS, in his official capacity as Director
of the Arkansas Department of Correction, and
OFFICER DEMERY, in their individual and
official capacities as correctional officers for the
Arkansas Department of Correction                              DEFENDANTS

## OPINION AND ORDER

Plaintiff Albert Lynn Cole brings this § 1983 action against the Arkansas Department of Correction ("ADC"),[1] its director Ray Hobbs, and one of its officers, Michael Demery, alleging that the defendants were deliberately indifferent to his serious medical needs while he was incarcerated in the ADC's Varner Unit. The defendants have moved for summary judgment (Dkt. No. 8), and Mr. Cole has responded (Dkt. No. 17). For the foregoing reasons, the defendants' motion is GRANTED IN PART and DENIED IN PART.

### A. Factual Background

Mr. Cole injured his right shoulder on September 9, 2008 when he was thrown from a horse. He was treated at the prison infirmary, where his arm was placed in a sling, and then transported by Officer Demery to Jefferson Regional Medical Center ("JRMC") for further evaluation. Mr. Cole testified that Major Curtis Gibson, Officer Demery's superior, told Officer Demery not to handcuff Mr. Cole's right wrist during transport. Officer Demery and Donna Venable, another officer who assisted Officer Demery with the transport, testified that Major

---

[1] Mr. Cole concedes that his claims against the Arkansas Department of Correction are barred by the Eleventh Amendment. *See Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007).

Gibson said nothing about the use of restraints. The defendants contend that Mr. Cole was transported to JRMC in handcuffs and leg irons. Mr. Cole contends that only his left wrist was handcuffed on the trip to JRMC.

Mr. Cole was evaluated at JRMC by Dr. Charles Clark. Dr. Clark determined that Mr. Cole had sustained a fracture at the juncture of the middle and distal thirds of the clavicle, with minimal inferior displacement of the distal fragment relative to the proximal fragment. Dr. Clark prescribed Vicodin and Flexoril and told Mr. Cole to follow up with Dr. John Lytle in three weeks. Mr. Cole testified that Dr. Clark told him, in the presence of Officer Demery, not to move his right arm. Officer Demery and Officer Venable testified that Dr. Clark said nothing about the use of handcuffs.

It is undisputed that Officer Demery handcuffed Mr. Cole's right wrist before the return trip to the prison. Mr. Cole testified that Officer Demery told him to lift his shirt. According to Mr. Cole, when Mr. Cole asked Officer Demery what he was doing, Officer Demery grabbed Mr. Cole's right arm and pulled it out of the sling, prompting Mr. Cole to exclaim that "that wasn't right." Mr. Cole claims he told Officer Demery not to handcuff his right wrist, but Officer Demery insisted. Despite Mr. Cole's repeated protests, and his vain plea to Officer Venable to intervene, Officer Demery placed his right wrist in handcuffs. Mr. Cole contends that when he complained of pain, he was told to "shut up and get in the van" and that "it would be over before [he knew] it." Officer Demery and Officer Venable testified that Mr. Cole did not object when his wrists were placed in handcuffs.

Mr. Cole saw Connie Hubbard, an advanced practice nurse, on September 24, 2008. She noted a "prominence of the rt clavical laterally" and indicated that the clavicle "mov[es] when he lays down at night." The next day, Nurse Hubbard noted that the x-ray showed "a healing

fracture of the mid 1/3 of the right clavicle in anatomic position." Mr. Cole saw Ms. Hubbard again on October 8, 2008, at which time Ms. Hubbard noted a "visible prominence of the clavical [sic]." Mr. Cole followed up with Dr. Lytle on October 15, 2008, and again on November 5, 2008. During both visits, Dr. Lytle indicated that the clavicle was healing properly. On February 25, 2009, after his release from prison, Mr. Cole was evaluated by Dr. Christopher Morgan of Baptist Health Medical Clinic. Dr. Morgan noted an "obvious deformed clavicle." Mr. Cole was also examined by John Wilson, a doctor at the University of Arkansas for Medical Sciences, on March 13, 2009. Dr. Wilson noted a "fracture of [the] right clavicle in bayonet position" and a "step-off over the distal junction, middle distal third of [the] clavicle on the right."[2]

### B. Legal Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).

### C. Pending Claims

1. *Claims Against Mr. Hobbs*

Supervisory officials are not liable under § 1983 unless they are personally involved in the alleged violation or their corrective inaction amounts to deliberate indifference to or tacit

---

[2] The Court granted Mr. Cole's Motion to Supplement the Record (Dkt. No. 21) with this information by separate order.

authorization of the violation. *Choate v. Lockart*, 7 F.3d 1370, 1376 (8th Cir. 1993). To be held liable, a supervisor "'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see.'" *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (alternation in original) (quoting *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994)). Mr. Cole claims that Mr. Hobbs was personally involved because Mr. Hobbs denied Mr. Cole's appeal of a grievance filed with the ADC in which he alleged he was not receiving proper medical treatment for his shoulder injury. A supervisor's denial of a prisoner's grievance, by itself, is not actionable under § 1983, *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993), and a claim for failure to provide preferred medical treatment is only cognizable against "the individual directly responsible for the inmate's medical care." *Kulow v. Nix*, 28 F.3d 855, 859 (8th Cir. 1994). Mr. Cole has not made the requisite showing of involvement on the part of Mr. Hobbs. Therefore, Mr. Hobbs is entitled to summary judgment on Mr. Cole's claims against him.

2. *Claims Against Officer Demery*

To establish an Eighth Amendment violation, Mr. Cole must satisfy two requirements. First, he must show that the alleged deprivation, viewed objectively, is sufficiently serious. Second, he must show that prison officials were deliberately indifferent to a serious medical need or substantial risk to his health or safety. *Nelson v. Correctional Med. Servs.*, 583 F.3d 522, 528-29 (8th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The second requirement is a subjective one; "the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Mr. Cole has presented sufficient evidence of an objectively serious deprivation to get to trial on his claims against Officer Demery. Mr. Cole was treated by Dr. Clark for a fractured

clavicle. *See Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) ("A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."). The defendants do not seriously dispute that such an injury is a significant one, other than to argue that Mr. Cole was able to lie down while being transported to the hospital. Rather, they contend that there is no evidence that Officer Demery's application of handcuffs on the return trip to the prison from JRMC caused any additional injury to Mr. Cole's shoulder.

The evidence before the Court on this point creates a genuine issue of material fact. On September 24, 2008, a matter of days after Mr. Cole's transport from JRMC by Officer Demery, Nurse Hubbard noted a "prominence of the rt clavical laterally." On October 8, 2008, she noted a "visible prominence of the clavical [sic]." On February 25, 2009, Dr. Morgan noted an "obvious deformed clavicle." There is evidence to the contrary. On October 15, 2008, Dr. Lytle noted that the clavicle "remain[ed] in good position, and on November 5, 2008, he observed that the x-ray showed "good evidence of healing." Drawing all reasonable inferences in favor of Mr. Cole, as the Court is required to do at the summary judgment stage, the Court concludes there is a genuine issue of material fact as to whether Mr. Cole suffered something more than a *de minimus* injury as a result of Officer Demery's application of handcuffs.[3]

---

[3] The Court is not convinced at this stage that *de minimus* injury is necessarily the proper standard. The defendants are correct that there must be a showing of actual injury that is greater than *de minimus* to establish a conditions of confinement claim under § 1983. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). This case, however, could also be evaluated as an excessive force claim, given that Officer Demery used force that Mr. Cole contends was excessive to restrain him. "The objective standard that must be satisfied in a conditions-of-confinement claim differs from that applicable in the excessive force context, where the malicious and sadistic use of force by prison officials always violates 'contemporary standards of decency.'" *Schoelch v. Mitchell*, 625 F.3d 1041, 1047 (8th Cir. 2010) (quoting *Wilkins v. Gaddy*, __U.S.__, 130 S. Ct. 1175, 1178 (2010)).

Mr. Cole has also presented evidence from which a factfinder could determine that Officer Demery was deliberately indifferent to his medical needs.  Mr. Cole does not have to show that Officer Demery actually believed that handcuffing his right wrist would cause further damage to his fractured clavicle to survive summary judgment.  *See Nelson v. Correctional Medical Svcs.*, 583 F.3d 522, 529 (8th Cir. 2009).  "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . a question of fact subject to demonstration in the usual ways, and a factfinder may conclude that the official knew of a substantial risk from the very fact that it was obvious."  *Farmer*, 511 U.S. at 826.  According to the statement of facts presented by Mr. Cole, which the defendants dispute, Major Gibson instructed Officer Demery not to handcuff Mr. Cole's right wrist.  Mr. Cole further testified that Dr. Clark told him, in the presence of Officer Demery, not to move his right arm.  Mr. Cole protested when Officer Demery lifted his shirt and grabbed his arm.  When Officer Demery attempted to handcuff his wrist, Mr. Cole again insisted that "that was not right."  Despite Mr. Cole's repeated protests, Officer Demery placed his right wrist in handcuffs.  When Mr. Cole complained of pain, he was told to "shut up and get in the van" and that "it would be over before [he knew] it."  Drawing all reasonable inferences in favor of Mr. Cole, a factfinder could determine that Officer Demery violated Mr. Cole's Eighth Amendment rights.

The question then becomes whether the right was clearly established.  Qualified immunity protects an official in the performance of discretionary functions unless the official's actions violate an inmate's "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007).  A constitutional right is clearly established when "the contours of the right are sufficiently clear

that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

The Court questions at the outset whether Officer Demery was performing a discretionary function when he handcuffed Mr. Cole's right wrist. *See Scheuer v. Rhodes*, 416 U.S. 232, 247 (1974) ("[Q]aulified immunity is available to officers, . . . *the violation being dependent upon the scope of discretion and responsibilities of the office . . . .*" (emphasis added)). While it is true that prison policy requires officers who transport prisoners to use "good judgment in the use of restraints," Mr. Cole testified that Officer Demery was specifically instructed not to handcuff Mr. Cole's right wrist.

Regardless of whether Officer Demery was engaged in a discretionary function, the Court cannot say that a reasonable official in Officer Demery's position would not have known that grabbing Mr. Cole's arm and handcuffing his right wrist a short time after he had suffered a fractured right clavicle violated Mr. Cole's Eighth Amendment rights. There is evidence, albeit disputed, that Dr. Clark told Mr. Cole, in the presence of Officer Demery, not to move his right arm and that Officer Demery persisted in his conduct despite Mr. Cole's repeated protests and complaints of pain, further injuring Mr. Cole. "'[I]f there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment.'" *Nelson*, 583 F.3d at 528 (alteration in original) (quoting *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001)). Drawing all inferences in Mr. Cole's favor, the Court concludes that Officer Demery is not entitled to qualified immunity.

For the foregoing reasons, the defendants' Motion for Summary Judgment is granted as to Mr. Cole's claims against the Arkansas Department of Correction and Ray Hobbs and denied as to the claims against Officer Demery in his individual capacity.

SO ORDERED this __29__ day of June, 2012.


Kristine G. Baker
United States District Judge